# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

ANTHONY BROOKS,

    Plaintiff

v.

NEVADA DEPARTMENT OF CORRECTIONS, et. al.,

    Defendants

Case No.: 3:19-cv-00623-MMD-WGC

**Order**

Re: ECF Nos. 10, 12

Plaintiff has filed an application to proceed in forma pauperis (IFP) and financial certificate (ECF Nos. 7, 12), as well as his pro se complaint (ECF No. 10).

## I. BACKGROUND

Plaintiff initiated this action by filing a "Notice of Intent Civil Rights Complaint 42 U.S.C. § 1983," stating that Plaintiff's complaint *will* allege that his rights were violated by the Nevada Department of Corrections (NDOC) because his legal mail was being held or thrown away, and the NDOC was issuing false financial certificates for proceeding IFP showing that Plaintiff had substantial balances that Plaintiff claims were not accurate. (ECF No. 1-1.) Along with this document, he filed an "order of injunction" that would prohibit NDOC from interfering in his case. (ECF No. 1-2.) He did not include an application to proceed IFP and required financial certificate or pay the filing fee.

The court ordered Plaintiff to file an IFP application and financial certificate or pay the filing fee. The court also advised Plaintiff that it had undertaken a preliminary review of Plaintiff's initiating document, which it construed as a complaint, and cautioned Plaintiff it was

likely to be dismissed as it only named NDOC, which is not subject to suit. Therefore, the court also ordered Plaintiff to file an amended complaint. (ECF No. 3.)

Plaintiff then filed a motion to extend the time to file his IFP application and financial certificate. (ECF No. 4.) The court granted Plaintiff an extension until December 13, 2019, to file his financial certificate and IFP application. (ECF No. 6.) Plaintiff filed a financial certificate on November 25, 2019. (ECF No. 7) That day he also filed a request for a subpoena (ECF No. 8) and a "formal complaint" against NDOC, NDOC's Director, Warden Gittere, and the Mailroom Supervisor at Ely State Prison (ESP). (ECF No. 10.)

For unknown reasons, the "formal complaint" was apparently *filed* on November 25, 2019, but was not *entered* into the docket until December 3, 2019. As a result, the undersigned was not aware of the "formal complaint" when the December 2, 2019 order was entered giving Plaintiff an extension of time to file his IFP application and amended complaint. (ECF No. 9.)

On December 12, 2019, he filed his IFP application. (ECF No. 12.)

On March 17, 2020, the undersigned issued a report and recommendation to District Judge Miranda Du that this action be dismissed due to Plaintiff's failure to file an amended complaint. (ECF No. 15.) The court overlooked the "formal complaint" filed at ECF No. 10 because it was titled a "formal complaint" in both the docket and in Plaintiff's document, and not an "amended complaint" as Plaintiff was directed to file. Therefore, the court is withdrawing the report and recommendation at ECF No. 15, and will now address the IFP application and screen the "formal complaint," which the court construes as Plaintiff's amended complaint.

## **II. IFP APPLICATION**

A person may be granted permission to proceed IFP if the person "submits an affidavit that includes a statement of all assets such [person] possesses [and] that the person is unable to

pay such fees or give security therefor. Such affidavit shall state the nature of the action, defense or appeal and affiant's belief that the person is entitled to redress." 28 U.S.C. § 1915(a)(1); *Lopez v. Smith*, 203 F.3d 1122, 1129 (9th Cir. 2000) (en banc) (stating that 28 U.S.C. § 1915 applies to all actions filed IFP, not just prisoner actions).

The Local Rules of Practice for the District of Nevada provide: "Any person who is unable to prepay the fees in a civil case may apply to the court for authority to proceed [IFP]. The application must be made on the form provided by the court and must include a financial affidavit disclosing the applicant's income, assets, expenses, and liabilities." LSR 1-1.

"[T]he supporting affidavits [must] state the facts as to [the] affiant's poverty with some particularity, definiteness and certainty." *U.S. v. McQuade*, 647 F.2d 938, 940 (9th Cir. 1981) (quotation marks and citation omitted). A litigant need not "be absolutely destitute to enjoy the benefits of the statute." *Adkins v. E.I. Du Pont de Nemours & Co.*, 335 U.S. 331, 339 (1948).

An inmate submitting an application to proceed IFP must also "submit a certificate from the institution certifying the amount of funds currently held in the applicant's trust account at the institution and the net deposits in the applicant's account for the six months prior to the date of submission of the application." LSR 1-2; *see also* 28 U.S.C. § 1915(a)(2). If the inmate has been at the institution for less than six months, "the certificate must show the account's activity for this shortened period." LSR 1-2.

If a prisoner brings a civil action IFP, the prisoner is still required to pay the full amount of the filing fee. 28 U.S.C. § 1915(b)(1). The court will assess and collect (when funds exist) an initial partial filing fee that is calculated as 20 percent of the greater of the average monthly deposits or the average monthly balance for the six-month period immediately preceding the filing of the complaint. 28 U.S.C. § 1915(b)(1)(A)-(B). After the initial partial filing fee is paid,

the prisoner is required to make monthly payments equal to 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency that has custody of the prisoner will forward payments from the prisoner's account to the court clerk each time the account exceeds $10 until the filing fees are paid. 28 U.S.C. § 1915(b)(2).

Plaintiff's certified account statement indicates that his average monthly balance for the last six months was $26.25, and his average monthly deposits were $0. (ECF No. 7.)

Plaintiff's application to proceed IFP is granted. Plaintiff is required to pay an initial partial filing fee in the amount of $5.25 (20 percent of $26.25). Thereafter, whenever his prison account exceeds $10, he must make monthly payments in the amount of 20 percent of the preceding month's income credited to his account until the $350 filing fee is paid.

### III. SCREENING

**A. Standard**

Under the statute governing IFP proceedings, "the court shall dismiss the case at any time if the court determines that-- (A) the allegation of poverty is untrue; or (B) the action or appeal-- (i) is frivolous or malicious; (ii) fails to state a claim upon which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(A), (B)(i)-(iii).

In addition, under 28 U.S.C. § 1915A, "[t]he court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). In conducting this review, the court "shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint--

(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b)(1)-(2).

Dismissal of a complaint for failure to state a claim upon which relief may be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and 28 U.S.C. § 1915(e)(2)(B)(ii) tracks that language. As such, when reviewing the adequacy of a complaint under this statute, the court applies the same standard as is applied under Rule 12(b)(6). *See e.g. Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012) ("The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim."). Review under Rule 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Lab. Corp. of America*, 232 F.3d 719, 723 (9th Cir. 2000) (citation omitted).

The court must accept as true the allegations, construe the pleadings in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969) (citations omitted). Allegations in pro se complaints are "held to less stringent standards than formal pleadings drafted by lawyers[.]" *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (internal quotation marks and citation omitted).

A complaint must contain more than a "formulaic recitation of the elements of a cause of action," it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "The pleading must contain something more … than … a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id.* (citation and quotation marks omitted). At a minimum, a plaintiff should include "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

5

A dismissal should not be without leave to amend unless it is clear from the face of the complaint that the action is frivolous and could not be amended to state a federal claim, or the district court lacks subject matter jurisdiction over the action. *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995); *O'Loughlin v. Doe*, 920 F.2d 614, 616 (9th Cir. 1990).

**B. Plaintiff's Amended Complaint**

The caption of the amended complaint names NDOC, NDOC's Director, ESP's Warden Gittere, and ESP's Mailroom Supervisor. (ECF No. 10 at 1.) The body of the amended complaint lists NDOC's director; Warden Gittere; and the ESP Mailroom Supervisor.

Plaintiff was previously advised that NDOC is not a proper defendant in this action; yet, Plaintiff still names NDOC in the caption and alleges that this is an action against NDOC. Plaintiff will be given one more opportunity to amend to correct this deficiency. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989); U.S. Const. amend XI.

**1. Claim 1**

In Claim 1, Plaintiff alleges that on September 9, 2019, ESP provided Plaintiff with a six-month financial statement in another of his cases which contained a false balance for his prison account. Since that time, Plaintiff alleges that NDOC has provided four more false financial certificates. He avers that this is an attempt to interfere with his right of access to the courts so that he can file civil rights complaints.

42 U.S.C. § 1983 provides a mechanism for the private enforcement of substantive rights conferred by the Constitution and federal statutes. Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (internal quotation marks and citation omitted). To state a claim under section 1983, a plaintiff must allege: (1) his or her civil rights

were violated, (2) by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48-49 (1988). To adequately plead the section 1983 elements, a complaint must identify what constitutional right each defendant violated, and provide sufficient facts to plausibly support each violation. *See e.g., Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002) (noting defendants must personally participate in misconduct to be liable under section 1983).

The court construes Plaintiff's allegations as attempting to assert an access to the courts claim. The claim, however, suffers from various defects. First, it does not identify a particular defendant responsible for allegedly violating his rights. He must connect the alleged unconstitutional conduct to a particular defendant.

Second, prisoners have a constitutional right of access to the courts. *See Lewis v. Casey*, 518 U.S. 343, 346 (1996). To state such a claim, however, a prisoner must allege that he has suffered an *actual injury*, and this is a jurisdictional requirement that flows from the standing doctrine and may not be waived. *See id*. at 349. An "actual injury" is "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." *Id*. at 348 (citation and internal quotation marks omitted). Plaintiff does not allege he has suffered actual injury as a result of the alleged conduct. Instead, he only alleges that unidentified prison officials were *attempting* to interfere with his access to the courts. This is insufficient.

In 2019 and so far in 2020, Plaintiff has filed many actions in this court: 3:19-cv-00504-MMD-WGC; 3:19-cv-00332-MMD-WGC; 3:19-cv-00457-APG-CLB; 3:19-cv-00623-MMD-WGC; 3:19-cv-00672-GMN-CLB; 3:19-cv-00696-MMD-WGC; 3:20-cv-00135-MMD-CLB; 3:20-cv-00159-JAD-CLB; 3:20-cv-00183-MMD-CLB; 3:20-cv-00189-JAD-WGC.

Despite being advised on numerous occasions of the necessity to initiate an action in federal court with an application to proceed IFP and financial certificate or paying the filing fee, in almost all of these cases Plaintiff has failed to do so. In each case, the court has instructed Plaintiff of the need to do so, only to have Plaintiff request further extensions, and/or file one document and not the other, taking up valuable court time and resources.

In case 3:19-cv-00332-MMD-WGC, Plaintiff made a similar argument that prison officials were falsifying financial certificates by greatly inflating his average monthly balances; however, while he made this argument, the financial certificate that he filed in that case did not reflect that to be the case and the court went ahead and granted his IFP application based on the financial certificate filed. (*See* 3:19-cv-00332-MMD-WGC, ECF Nos. 10, 19.)

In case 3:19-cv-00504-MMD-WGC, Plaintiff eventually submitted a financial certificate with his IFP application which also does not reflect the inflated balances that Plaintiff describes. (ECF No. 3:19-cv-00504-MMD-WGC ECF Nos. 11, 20.) The same is true of case 3:19-cv-00672-GMN-CLB (ECF No. 5) and 3:19-cv-00696-MMD-WGC (ECF No. 4), and also in this case.

These cases tend to contradict Plaintiff's allegation that he was denied access to courts as a result of supposed false financial certificates.

In an abundance of caution, the court will give Plaintiff leave to amend to attempt to state a viable access to courts claim. He must connect the alleged conduct to a particular defendant and identify the actual injury suffered as a result.

**2. Claim 2**

Plaintiff alleges that on September 27, 2019, legal mail was brought to his cell. He as not in his cell and his cell mate was told whoever was delivering the mail would be back that day.

They did not return, and when questioned the next day denied having been to Plaintiff's cell. Plaintiff states that he never received his legal mail. He then avers that this court has sent Plaintiff documents that never arrived. In addition, he claims that mail is held by ESP staff and then returned to Plaintiff to be re-mailed which causes a delay in his right of access to the courts. He states that he complained to the mail room and sent a letter to Warden Gittere when legal mail was sent out on November 17, 2019 and returned to him on November 19, 2019, un-mailed.

To the extent Plaintiff is asserting an access to courts claim in Claim 2, he must allege actual injury, which he has not done here.

Insofar as he is asserting a First Amendment claim relative to mail, a prisoner has a "First Amendment right to send and receive mail." *Witherow v. Paff*, 52 F.3d 264, 265 (9th Cir. 1995) (per curiam). Prison regulations concerning incoming mail should be analyzed under the factors set out in *Turner v. Safley*, 428 U.S. 78 (1987). While Plaintiff *might* state a claim about non-receipt of his mail or failure to send out his mail, Plaintiff is advised that "[m]ail from the courts, as contrasted to mail from a prisoner's lawyer, is not legal mail." *Keenan v. Hall*, 83 F.3d 1083, 1094 (9th Cir. 1996), *amended by* 135 F.3d 1318 (9th Cir. 1998).

With respect to both the access to courts and First Amendment mail claims, Plaintiff must connect the alleged unconstitutional conduct to a defendant. Plaintiff states that he sent Warden Gittere a letter about the mail returned without being mailed, but does not allege that Warden Gittere had anything to do with actually holding the mail and returning it.

Plaintiff will be given leave to amend to attempt to state access to courts and First Amendment claims by correcting the deficiencies noted above.

9

**3. Claim 3**

Plaintiff alleges that the interference with his access to legal mail and access to the courts continues to be violated. He repeats his allegation from Claim 2 that on November 17, 2019, he placed two pieces of legal mail out to be mailed, but both were returned the following day. He tried to mail the documents again but again, delaying his mail.

This claim is duplicative of Claim 3. In any amended complaint the allegations should be combined, and Plaintiff must identify a defendant in connection with the alleged conduct.

**4. Claim 4**

Plaintiff alleges that on September 18, 2019, he filed a handwritten motion to modify sentence with the Eighth Judicial District Court. It was placed in his door at ESP, sealed with a transaction slip. On October 28, 2019, he received back from the Eighth Judicial District Court a pre-printed motion for sentence modification which he alleges was a sample motion containing facts from 1936, and the signature was forged and had a false case number. He states that the ESP mail room staff opened his legal mail submitted on September 18, 2019, and inserted a false forged document, resealed it and mailed it, in an attempt to destroy his chance for early release and to block his right of access to the courts.

Plaintiff does not identify a particular defendant in connection with claim 4. In addition, mail sent to or from the courts is not legal mail. To the extent he is asserting a First Amendment claim related to mail tampering, he still has not identified any defendant responsible for this conduct. Finally, Plaintiff does not specifically allege that he suffered actual injury to the extent he is asserting an access to courts claim. He will be given leave to amend with respect to Claim 4.

5. **Claim 5**

Plaintiff alleges that in August of 2019 a raid was conducted at the Native American Research Center on Fort Apache in Las Vegas, Nevada, regarding money laundering "according to the internet news." He avers that after the search, it was determined this business had ties to the Free Mason Organization and was not a Native American business even though it received federal funds as such. He goes on to allege that there were two pieces of mail belonging to Plaintiff in envelopes addressed to him at ESP found at the business: one was a letter from Exxon with vital business information regarding an upcoming sale of land; and, the second was a letter to Plaintiff at ESP from William Boyd, President and CEO of Boyd Gaming. Plaintiff asks why and how his mail ended up in this business, and alleges that "Defendant 4" working in conspiracy with "Defendants 2 and 3" stole his mail from ESP and had it delivered to this business.

This claim is based on pure speculation and conjecture, and also fails to identify any particular defendant or specific conduct undertaken by that defendant that resulted in a constitutional violation. While the court is not convinced Plaintiff can amend to state a colorable claim based on the allegations presented thus far, in an abundance of caution, Plaintiff will be given leave to amend to attempt to assert a viable claim.

## IV. CONCLUSION

(1) The court's Report and Recommendation at ECF No. 15 is **WITHDRAWN.**

(2) Plaintiff's IFP application (ECF No. 12) is **GRANTED**; however, within **30 DAYS** Plaintiff must pay, through NDOC, an initial partial filing fee in the amount of $5.25. Thereafter, whenever his prison account exceeds $10, he is required to make monthly payments in the amount of 20 percent of the preceding month's income credited to his account until the full $350

filing fee is paid. This is required even if the action is dismissed, or is otherwise unsuccessful. The Clerk must **SEND** a copy of this Order to the attention of **Chief of Inmate Services for the Nevada Department of Corrections**, P.O. Box 7011, Carson City, Nevada 89702.

(3) The amended complaint is **DISMISSED WITH LEAVE TO AMEND**.

(4) Plaintiff has **30 DAYS** from the date of this Order to file a second amended complaint correcting the deficiencies noted above. The second amended complaint must be complete in and of itself without referring or incorporating by reference any previous complaint. Any allegations, parties, or requests for relief from a prior complaint that are not carried forwarded in the amended complaint will no longer be before the court. Plaintiff shall clearly title the second amended pleading as "SECOND AMENDED COMPLAINT." If Plaintiff fails to file a second amended complaint within the 30 days, the action may be dismissed.

(5) Plaintiff is advised that in any future action filed with the court he shall include the IFP application for a prisoner and required financial certificate or pay the $400 filing fee. In addition, an action is initiated by filing a civil complaint, not a notice of intent to file a complaint. In the future, if Plaintiff does not comply with these orders his actions will be dismissed without prejudice.

**IT IS SO ORDERED**.

Dated: April 2, 2020

_____
William G. Cobb
United States Magistrate Judge